737 S.E.2d 257

**STATE of West Virginia, Respondent**

v.

**JONATHAN B., Petitioner.**

No. 11–0282.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 23, 2012.

Decided Nov. 20, 2012.

Nicholas T. James, Esq., The James Law Firm, PLLC, Keyser, WV, for Petitioner.

Darrell V. McGraw, Jr., Esq., Attorney General, Michele Duncan Bishop, Esq., Assistant Attorney General, Charleston, WV, for Respondent.

BENJAMIN, Justice:

This case is before the Court on appeal by the petitioner, Jonathan B.,[1] of the December 16, 2010, order of the Circuit Court of Mineral County denying his motion for a new trial. Below, Jonathan B. was convicted of one count of second degree sexual assault, one count of incest, one count of detain with intent to defile, and one count of conspiracy.

---

**1.** Consistent with our practice in cases involving sensitive matters, we use the victim's initials. Since, in this case, the victim is related to the petitioner, we refer to the petitioner by his last name initial. *See State v. Edward Charles L.,* 183 W.Va. 641, 645 n. 1, 398 S.E.2d 123, 127 n. 1 (1990).

In this appeal, Jonathan B. argues that the circuit court erred by allowing the State to admit in its case in chief eight pornographic file names obtained during a search of his personal laptop computer. The State argued that the file names were incestuous. Jonathan B. also argues that the circuit court erroneously applied the Rape Shield statute, W. Va.Code § 61–8B–11(b), in refusing to allow him to admit into evidence a notebook maintained by the victim, M.B. Finally, Jonathan B. asserts that the circuit court erred by allowing the state to introduce evidence of his illegal drug and alcohol use.

After a thorough review of the record presented for consideration, the briefs, the legal authorities cited, and the arguments of Jonathan B. and the State, we find that the circuit court committed reversible error by failing to fully evaluate the admissibility of the pornographic file names pursuant to a *McGinnis* hearing. We further find that the circuit court erroneously applied the Rape Shield statute in refusing to allow Jonathan B. to admit the victim's notebook into evidence. We therefore reverse the circuit court's order denying the petitioner's motion for a new trial, and we remand this case for further proceedings consistent with this opinion.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves the alleged rape of M.B. by her half-brother, petitioner Jonathan B.,[2] and his friend, Kilton Kitchen ("Kitchen"). M.B. testified that the rape occurred between late July[3] and early August of 2006. At the time of the alleged rape, M.B. was thirteen years old, Jonathan B. was either nineteen or twenty years old,[4] and Kilton Kitchen was eighteen years old. M.B. lived with her father, Roger B., when the rape allegedly occurred. Jonathan B. lived with his grandmother, Shirley B., having been adopted by her when he was about eighteen months old. Shirley B. is the paternal grandmother of both M.B. and Jonathan B.

M.B. testified that on the day of the alleged rape, Jonathan B. invited her to join him and Kitchen for the night at Shirley B.'s home. M.B. agreed and arrived at the home sometime between 5:00 p.m. and 6:00 p.m. She stated that Jonathan B. and Kitchen left the house numerous times throughout the evening to acquire alcoholic beverages and pills that they crushed and snorted.[5]

According to M.B., she, Jonathan B., and Kitchen spent the majority of the evening in Jonathan B.'s basement bedroom in Shirley B.'s home.[6] During the evening, M.B. left the basement to use the restroom, leaving her Mountain Dew soft drink in the basement. When she returned, she found the men playing video games and drinking alcohol. M.B. testified at trial that she began feeling "weird" upon returning to the basement. She said, "Like, I was tired, but at the same time my body just like, I didn't feel like myself. Like, I don't know how to explain it. It was just a different feeling." She also testified that she did not feel groggy and said, "I still felt like I had all my power in me."

Because she felt "weird," she said that she rested on Jonathan B.'s bed. She stated that after they left the room for a short while, Jonathan B. and Kitchen returned and took turns holding her down and raping her. M.B. testified that she screamed and struggled during the rape but that the men in-

---

**2.** M.B. and Jonathan B. share the same father, Roger B.

**3.** In her written statement to a Prevention Resource Officer at her school, Deputy Paul Karalewitz, M.B. wrote that the rape occurred between June and August. At trial, however, she testified that she had mistakenly written "June" instead of "July."

**4.** Jonathan B. was born on July 31, 1986.

**5.** M.B. did not testify as to what type of pills Jonathan B. and Kitchen snorted. During the direct examination of Jonathan B., he admitted to having snorted "Percocet 10," and that he and Kitchen had snorted the drug in M.B.'s presence.

**6.** Shirley B. testified at trial that she and Jonathan B. lived in a 1800 square foot house with one main level and a basement. She stated that her bedroom was on the main level on the opposite end of the house from Jonathan B.'s basement bedroom. The basement had its own separate entrance to the outside.

creased the volume of the music playing at the time to drown out her screams. Shirley B., who was home at the time of the alleged rape, testified that she did not hear M.B. scream or any sounds of a struggle.

M.B. stated that after the rape, Kitchen told her that if she told anyone about the rape, he would kill her.[7] She testified that she went upstairs and showered then went to bed in one of the bedrooms on the main level of the home.

M.B. did not tell her grandmother about the rape. She later indicated to the investigating officer that she had informed her father, Roger B., about the rape one month after the rape but that he had told her, "I really don't want them hurting you so let's just keep this between us." At trial, Roger B. denied any such conversation took place.

Approximately 39 months after the rape allegedly occurred, on November 3, 2009, then sixteen-year-old M.B. told Deputy Karalewitz, a Prevention Resource Officer at her high school, about the rape. Deputy Karalewitz asked M.B. to provide him with a handwritten statement describing what had happened, and she complied.

On November 6, 2009, Deputy Karalewitz provided M.B.'s statement to another officer, Deputy McKone, for investigation. Two other deputies, Deputy Taylor and Deputy Leatherman, met with M.B. at her school for a follow-up interview on November 17, 2009. The case remained inactive until April 25, 2010, at which time Deputy Veach was assigned to the case.[8]

Deputy Veach, after reviewing the case file and speaking with M.B., obtained an arrest warrant for Jonathan B. on May 1, 2010. He arrested Jonathan B. at home the next day, May 2, 2010.

During the arrest, Deputy Veach noticed a laptop computer in Jonathan B.'s room and asked if he could take the computer into evidence. Jonathan B. consented. Deputy Veach acquired a search warrant on August 3, 2010, to search the computer. On the computer, Deputy Veach discovered eight video files with pornographic file names. He testified at trial that only four of the files would open, and that of those files, no child pornography was contained therein. He testified that some of the eight file names appeared to relate to incest. Deputy Veach noted on the property receipt upon conclusion of his search of the laptop that the eight files were created on April 29, 2010—three days before Jonathan B.'s arrest.

On September 8, 2010, the petitioner was indicted on one count each of second degree sexual assault, incest, detaining with intent to defile, and conspiracy. Numerous pretrial hearings were held prior to trial. An *in camera* hearing was held on September 24, 2010, to address the voluntariness of Jonathan B.'s permission for Deputy Veach to seize his laptop computer and to address whether probable cause existed for a search warrant to issue for a search of the computer. The circuit court determined that Jonathan B.'s permission was voluntary and that there was adequate probable cause supporting the search warrant.

A pretrial hearing was held on November 10, 2010, during which the Court addressed numerous motions presented by the defense, including a motion to exclude the pornographic file names and a motion to exclude evidence that Jonathan B. was drinking alcohol and taking illegal drugs prior to the alleged rape. With regard to the file names, the circuit court decided to allow the State to admit the property receipt with the file names into evidence, concluding,

> And I'm not, I think it goes to, I understand it's very prejudicial, but it goes to the question, and I relate back to the Supreme Court case, landmark case of *Edward L., In the Matter of Edward L.,* the Mineral County case that I was the Prosecutor in, and in that instance, such things can be brought in to show lustful disposi-

---

7. In the written statement she provided to Deputy Karalewitz, M.B. identified Jonathan B. as giving the death threat. At trial, however, M.B. testified that in the written statement, she had incorrectly identified Jonathan B. and that it was Kitchen who had threatened her.

8. Deputy Veach testified at trial that he did not know why the case remained inactive for more than 5 months and that he saw no indication that the delay was related to the credibility of M.B.

tion towards children. And I think here, this shows a lustful disposition towards persons in the same situation as the victim in this case, I guess, is the polite way of saying it. So, I think that's more probative than prejudicial, and so I think, you know, I am ruling that it is, the titles to these things are admissible.

With regard to the evidence of illegal alcohol and drug use, the court found that the evidence was also admissible.

During the same pretrial hearing, the court also examined the admissibility of a notebook maintained by M.B.,[9] created after the alleged rape, in which she describes her only sexual encounters being with "Chris." Jonathan B. argued that the notebook was admissible because it challenged the credibility of statements M.B. allegedly made to police in which she claimed her first sexual encounter was with Jonathan B. and Kitchen. The court deferred ruling on the admissibility of the notebook until a November 12, 2010, *in camera* hearing. At that hearing, upon receiving the arguments of the parties, the circuit court found,

> I think doing any of the tests under *Quinn, Guthrie,* under the Rules of Evidence, using all of those tests, this evidence should not come in.... So I'm going to direct that she not mention that in her testimony and I will say that the notebook cannot be introduced into evidence or cannot be used for impeachment.

Jonathan B.'s two-day trial began on November 15, 2010.[10] At the beginning of the trial, the court conducted voir dire and selected members of the jury. During voir dire, one juror admitted that she would have trouble sitting in judgment of a person who possessed pornographic material. That person was excused from the jury. Many of the potential jurors were then individually questioned regarding their views on people who possessed pornographic material, but no additional jurors stated that possession of pornography would affect their ability to fairly decide a case.

At trial, Jonathan B. testified in his own defense. He denied raping M.B. and stated that he believed she was motivated to fabricate the rape because of an argument the two had a week or so before M.B. reported the rape to Deputy Karalewitz. The argument, Jonathan B. said, was regarding his disapproval of M.B.'s boyfriend. Jonathan B. also attributed the rape allegation to M.B.'s emotional issues. The remainder of Jonathan B.'s defense primarily consisted of the testimony of Shirley B., Roger B., and a neighbor all stating that there had been no change in M.B.'s demeanor between the time M.B. began living with her father in the summer of 2006 and shortly before she spoke with Deputy Karalewitz in late 2009. There was also testimony that M.B. lived with Shirley B. and Jonathan B. for a brief period of time after the alleged rape because of disagreements between M.B. and Roger B.'s fiancée. Additionally, Jonathan B. testified that he did not know Kilton Kitchen prior to the summer of 2007.

At the conclusion of the trial on November 16, 2010, the jury returned with a verdict of guilty on all counts. Jonathan B. was sentenced following a sentencing hearing on December 13, 2010. The December 15, 2010, sentencing order sentenced Jonathan B. to a total of not less than nineteen nor more than fifty-five years, with sentences on each of the four counts running consecutively.

Jonathan B. requested a new trial on the grounds that the evidence presented at trial did not support his conviction, that the notebook was improperly excluded, and that the pornographic file names were improperly admitted. The circuit court denied this motion in an order dated December 16, 2010. Jonathan B. now appeals to this Court.

## II.

### STANDARD OF REVIEW

This case requires us to evaluate the admissibility of evidence under Rule 404(b). With regard to reviewing a circuit court's

---

9. During the November 10, 2010, pretrial hearing, Jonathan B.'s counsel described the notebook as being "used back and forth between [M.B.] and one of her friends."

10. Jonathan B. and Kitchen were not tried together.

ruling on the admissibility of evidence, we have repeatedly held that these decisions are largely within the court's discretion and should not be disturbed unless they show an abuse of discretion. Syl. Pt. 2, *State v. Franklin,* 191 W.Va. 727, 448 S.E.2d 158 (1994) (" ' "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus Point 10, *State v. Huffman,* 141 W.Va. 55, 87 S.E.2d 541 (1955).' Syl. pt. 4, *State v. Ashcraft,* 172 W.Va. 640, 309 S.E.2d 600 (1983)."). We have further elaborated, "In reviewing the admission of Rule 404(b) evidence, we review it in the light most favorable to the party offering the evidence, ... maximizing its probative value and minimizing its prejudicial effect." *State v. McGinnis,* 193 W.Va. 147, 159, 455 S.E.2d 516, 528 (1994). The standard of review for the admission of 404(b) evidence was supplemented in *State v. LaRock,* 196 W.Va. 294, 310–11, 470 S.E.2d 613, 629–30 (1996):

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

We are also asked to review the circuit court's exclusion of evidence pursuant to the Rape Shield statute. We review a circuit court's findings with regard to the admissibility of evidence under the Rape Shield statute for abuse of discretion. Syl. pt. 6, in part, *State v. Guthrie,* 205 W.Va. 326, 518 S.E.2d 83 (1999) ("Under [test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial], we will reverse a trial court's ruling only if there has been a clear abuse of discretion."); *see also* Syl. pt. 1, *State v. Pancake,* 170 W.Va. 690, 296 S.E.2d 37 (1982) ("A trial judge's ruling after an *in camera* hearing on admissibility of evidence of a rape victim's prior sexual relationship with defendant will not be disturbed on appeal unless there is a clear abuse of discretion.").

## III.

### ANALYSIS

Jonathan B.'s four assignments of error involve determining the admissibility of three pieces of evidence: the pornographic file names obtained from Jonathan B.'s personal laptop computer, M.B.'s notebook, and Jonathan B.'s illegal drug and alcohol use. The alleged errors are discussed below as they relate to each of these pieces of evidence.

### A. Pornographic File Names

Jonathan B. argues two assignments of error with regard to the evidence of the pornographic file names. First, he argues that the circuit court committed reversible error by allowing the admission of this evidence because the evidence is more prejudicial than probative, because the evidence is not relevant, and because the evidence does not qualify as admissible evidence pursuant to West Virginia Rule of Evidence 404(b) or *State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990). Second, he argues that the circuit court committed reversible error in finding that the search warrant obtained by Deputy Veach to search his laptop computer was supported by probable cause. We proceed by addressing each error individually.

**1. Rule 404(b) and *Edward Charles L.*** Jonathan B. asks this Court to find that the pornographic file names, which the State argues were incestuous, were erroneously admitted into evidence pursuant to West Virginia Rule of Evidence 404(b) ("Rule 404(b)") and *Edward Charles L.* to show "lustful disposition." Rule 404(b) states, in part,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, in-

tent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

■ *Edward Charles L.* is the seminal case of this Court regarding the admission of evidence of lustful disposition pursuant to Rule 404(b). In that case, we held,

Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment. To the extent that this conflicts with our decision in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986), it is overruled.

Syl. pt. 2, *Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990). Therefore, *Edward Charles L.* requires that for the pornographic file names to be admissible in this case, (1) the evidence must demonstrate Jonathan B.'s lustful disposition toward M.B., children generally, or specific other children, and (2) the creation date of the files must be close in time to the alleged rape.

■ In addition to the admissibility requirements set forth in *Edward Charles L.,* the Court has described further admissibility requirements for Rule 404(b) evidence in Syl. pt. 2, *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994):

Where an offer of evidence is made under [Rule 404(b)], the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If sufficient showing has

been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

The Court has applied the requirements of *McGinnis* to a number of cases involving an offer of evidence under *Edward Charles L. See, e.g., State v. Rash,* 226 W.Va. 35, 697 S.E.2d 71 (2010); *State v. Graham,* 208 W.Va. 463, 541 S.E.2d 341 (2000); *State v. McIntosh,* 207 W.Va. 561, 534 S.E.2d 757 (2000). In *McIntosh,* the Court addressed the appellant's contention that the circuit court, in applying the requirements of *McGinnis,* had "inappropriately merged the principles of Rule 404(b) and the principles articulated in *Edward Charles L.*" 207 W.Va. at 568, 534 S.E.2d at 764. There, in finding that Rule 404(b) and *Edward Charles L.* were both appropriately applied, the Court said,

Rule 404(b) and *Edward Charles L.* must be examined concurrently by a lower court confronted with the issue of admissibility of collateral acts in a child sexual assault or abuse case. *Edward Charles L.* speaks directly and specifically to the issue of Rule 404(b) application to these types of cases, and evaluation under the principles identified in that case is imperative.

*McIntosh,* 207 W.Va. at 574, 534 S.E.2d at 770.

■ Following the precedent set by the above cases, we now hold that where an offer has been made of lustful disposition evidence pursuant to *State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990), the reviewing court must evaluate the admissibility of that evidence as required by *Edward Charles L.* and *State v. McGinnis,* 193 W.Va. 147, 455

S.E.2d 516 (1994). Applying this holding to the facts of the case *sub judice*, we find that the circuit court did not conduct the thorough analysis of the 404(b) evidence at issue—the pornographic file names—as required by *Edward Charles L.* and *McGinnis*. The record provided to the Court and the statements of counsel during oral argument indicate that a proper *McGinnis* hearing, in which the circuit court conducts an evaluation of the evidence pursuant to syllabus point 2 of *McGinnis*, never took place with regard to the pornographic file names. The circuit court did perform an examination of the evidence during the November 10, 2010, pretrial hearing, but this review of the evidence did not satisfy the requirements of *McGinnis*. The hearing was not *in camera*, the discussion of the pornographic file names in this hearing was pursuant to Jonathan B.'s motion to exclude the evidence, the court did not describe whether its findings were by a preponderance of the evidence, and the court did not give a limiting instruction regarding the evidence when it was first presented to the jury during trial.[11] Perhaps the most problematic omission of the circuit court, however, was its failure to consider or discuss the requirement of *Edward Charles L.* that admissible Rule 404(b) evidence be close in time to the incident giving rise to the indictment.

 Because we find that the circuit court's failure to hold a *McGinnis* hearing has rendered it unable to fully consider all of the evidentiary requirements of *McGinnis* and *Edward Charles L.* with regard to the pornographic file names, we conclude that the circuit court abused its discretion by allowing said evidence to be admitted at trial.[12] We also find that because of the highly prejudicial nature of this particular evidence, especially in this case where the State's case rests solely on the claims of the alleged victim,[13] the error is reversible. *See McGinnis*, 193 W.Va. at 153, 455 S.E.2d at 522 ("It is equally inescapable that where a trial court erroneously admits Rule 404(b) evidence, prejudicial error is likely to result. *See Government of Virgin Islands v. Toto*, 529 F.2d 278, 283 (3rd Cir.1976) (Rule 404(b) evidence was wrongfully admitted and "[a] drop of ink cannot be removed from a glass of milk"); *United States v. Sanders*, 964 F.2d 295, 299 (4th Cir.1992) (Rule 404(b) evidence wrongly admitted "obviously has the capacity to tip the balance" in the jury's deliberations); *State v. Dolin*, 176 W.Va. 688, 692, 347 S.E.2d 208, 212–13 (1986) ("the admission of collateral crime evidence is highly prejudicial"), *overruled on other grounds, State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990); *State v. Simmons*, 175 W.Va. 656, 658, 337 S.E.2d 314, 316 (1985) ("[t]he improper admission of evidence relating to collateral crimes has generally been held to constitute reversible error").").

**2. Probable Cause.** Jonathan B. claims that the search warrant obtained by Deputy Veach to search the laptop computer lacked sufficient probable cause, and so he argues that the search of the computer was conducted in violation of the Fourth Amendment to the United States Constitution.[14] The State

---

11. The court did read a limiting instruction regarding the use of the evidence during the charge to the jury at the conclusion of the trial.

12. In *Stafford v. Rocky Hollow Coal Co.*, 198 W.Va. 593, 482 S.E.2d 210 (1996), the Court reversed the circuit court for failing to conduct the proper *McGinnis* analysis. The Court said,

> It is obvious that the trial court abused its discretion when it failed to comply with the gate-keeping requirement for the admissibility of prior bad acts under W. Va. R. Evid. 404(b). For this reason, we have no other alternative than to reverse the verdict and remand this matter for further proceedings.

*Stafford*, 198 W.Va. at 600, 482 S.E.2d at 217.

13. " 'A conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury.' Syl. pt. 5, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981)." Syl. pt. 1, *State v. Haid*, 228 W.Va. 510, 721 S.E.2d 529 (2011).

14. Article III, Section 6 of the West Virginia Constitution states,

> The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized.

The Fourth Amendment to the United States Constitution is virtually identical.

counters that because the petitioner gave Deputy Veach permission to take the computer into evidence, no warrant was necessary to search the computer, and thus it was not necessary to establish probable cause. Essentially, the State argues that by giving Deputy Veach permission to take the computer into evidence, Jonathan B. gave Deputy Veach implied consent to search the computer.

▬▬▬ In *State v. Flippo*, 212 W.Va. 560, 575 S.E.2d 170 (2002), we found that a person can give implied consent to a search. In *Flippo*, the petitioner called police claiming that he and his wife had been attacked in a cabin they were renting at the time. While responding to the call, the police discovered photographs which they later attempted to admit at the petitioner's trial for the murder of his wife. The petitioner objected to the admission of the photographs on the grounds that they were the fruit of an unlawful search and seizure. The circuit court and this Court both concluded that the petitioner in *Flippo* had given police implied consent to search and seize evidence from the cabin when he requested that they investigate the alleged attack. The Court held,

> Consent to search may be implied by the circumstances surrounding the search, by the person's prior actions or agreements, or by the person's failure to object to the search. Thus, a search may be lawful even if the person giving consent does not recite the talismanic phrase: "You have my permission to search."

Syl. pt. 1, *Flippo*, 212 W.Va. 560, 575 S.E.2d 170.[15]

Additionally, we recognize that the Supreme Court of the United States has also addressed consent with regard to searches. In *Florida v. Jimeno*, 500 U.S. 248, 251, 111

S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991), the Court decided "whether it is reasonable for an officer to consider a suspect's general consent to a search of his car to include consent to examine a paper bag lying on the floor of the car." In answering the question in the affirmative, the Court said,

> The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect? *Illinois v. Rodriguez, supra,* at 183–189 [110 S.Ct. 2793, 111 L.Ed.2d 148]; *Florida v. Royer,* 460 U.S. 491, 501–502 [103 S.Ct. 1319, 75 L.Ed.2d 229] (1983) (opinion of WHITE, J.); *id.,* at 514 [103 S.Ct. 1319] (BLACKMUN, J., dissenting).

*Id.* at 251, 111 S.Ct. at 1803–04.

▬▬ Based on the foregoing, we find that it was not necessary for Deputy Veach to obtain a warrant to search the computer because Jonathan B. gave implied consent to Deputy Veach to search the contents of the computer. A reasonable person giving a police officer permission to seize his computer would understand that permission to seize the computer also included permission to examine the electronic contents of the computer.[16] Therefore, we conclude the question of whether probable cause existed to obtain a warrant to search the computer is irrelevant; no warrant was needed to search the computer.

## B. The Notebook

Jonathan B. argues that the circuit court erred in its application of the Rape Shield statute and that the error—refusing to allow him to admit M.B.'s notebook—violated his

---

**15.** Following *Flippo*, the Court has recognized that searches that are the result of coercion or the "submission to colorable authority of police officers" are not constitutionally sound absent a warrant. Syl. pt. 3, in part, *State v. McClead*, 211 W.Va. 515, 566 S.E.2d 652 (2002) *overruled on other grounds by State v. Stone*, 229 W.Va. 271, 728 S.E.2d 155 (2012).

**16.** *Cf. State v. White*, 228 W.Va. 530, 546, 722 S.E.2d 566, 582 (2011) ("[I]t has been observed generally that an additional warrant is not re-

quired to examine seized objects. *See ... State v. Gregory*, 158 Wash.2d 759, 826, 147 P.3d 1201, 1236 (2006) (observing that "once a suspect's property is lawfully in the State's control, the State may perform forensic tests and use the resulting information to further unrelated criminal investigations, without violating the owner's Fourth Amendment rights" (citing *State v. Cheatam*, 150 Wash.2d 626, 638, 81 P.3d 830 (2003))).")

constitutional due process rights to a fair trial. The State argues, and the circuit court found, that the notebook is the type of excludable evidence described in the Rape Shield statute. The court said during the November 12, 2010, *in camera* hearing, "[T]his is clearly, would be a violation of the Rape Shield Act if I were to allow this to come in."

We begin our analysis of this issue by examining the pertinent portion of the Rape Shield statute, W. Va.Code § 61–8B–11(b):

> In any prosecution under this article evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible: Provided, That such evidence shall be admissible solely for the purpose of impeaching credibility, if the victim first makes his or her previous sexual conduct an issue in the trial by introducing evidence with respect thereto.

■ In *State v. Guthrie*, 205 W.Va. 326, 339, 518 S.E.2d 83, 96 (1999), we recognized that the purpose of this statute is "to protect the victims of sexual assault from humiliating and embarrassing public fishing expeditions into their sexual conduct; to overcome victims' reluctance to report incidents of sexual assault; and to protect victims from psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders." However, despite these very important goals, evidence of sexual conduct may still be admissible despite the Rape Shield statute where the exclusion of the evidence violates a defendant's due process rights. *Guthrie*, 205 W.Va. at 337, 518 S.E.2d at 94 ("The rape shield statute is expressly designed to yield to constitutional

protections that assure fair trials with just outcomes." (quoting *People v. Hill,* 289 Ill. App.3d 859, 862, 225 Ill.Dec. 244, 247, 683 N.E.2d 188, 191 (1997))). The Court annunciated its test for determining the admissibility of this type of evidence in syllabus point 6 of *Guthrie:*

> The test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence supportive of his or her defense. Under this test, we will reverse a trial court's ruling only if there has been a clear abuse of discretion.

■ Upon applying this test to the facts of this case, we conclude that the circuit court abused its discretion in finding that the evidence was inadmissible. We find that the notebook is relevant evidence for the purpose of evaluating M.B.'s credibility.[17] In the notebook, which Jonathan B. asserts was written after the alleged rape, M.B. stated that she had only ever had sexual intercourse with one person: "Chris."[18] As noted *supra,* in this case, where the State's case relies almost completely on the testimony of M.B., the evidence is highly probative for Jonathan B.'s defense because the notebook was supposedly created after the alleged rape occurred. The prejudicial value of the evidence is low, as the purpose of admitting the evidence is not to imply promiscuity, but to attack M.B.'s credibility. In this way, the evidence is not of the type the Rape Shield statute was intended to exclude. In sum, we find that the balance of interests in this case

---

**17.** " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W. Va. R. Evid. 401.

**18.** The Court is very sensitive to the nature of this evidence. In no way does this Court intend to imply through this opinion that, where a victim's first sexual experience is during a rape, the victim would necessarily consider the rape as

affecting his or her virginity. We also do not suggest that a rape victim would consider his or her attacker as a sexual partner. Furthermore, we recognize that a rape victim may wish to hide the fact that he or she was raped from others. However, given the nature of the evidence in this particular case, we find that it is within the province of the jury to weigh the probative value of the evidence as it concerns the credibility of the alleged rape victim, M.B.

weighs in favor of Jonathan B., and therefore, the evidence is admissible, subject to proper authentication.

### C. Drug and Alcohol Use

■ Jonathan B. argues that the circuit court committed reversible error by allowing M.B. to testify as to Jonathan B.'s illegal drug and alcohol use on the date of the alleged rape without conducting a *McGinnis* hearing. As with the evidence of the pornographic file names, no *in camera McGinnis* hearing was held in which the circuit court addressed the admissibility of this Rule 404(b) evidence. However, we find that this evidence is admissible as part of the *res gestae* of the alleged crime, and so a *McGinnis* hearing was unnecessary.

In *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996), we explored when the admissibility of evidence is governed by Rule 404(b) and the requirements of *McGinnis.* We said,

> In determining whether the admissibility of evidence of "other bad acts" is governed by Rule 404(b), we first must determine if the evidence is "intrinsic" or "extrinsic." *See United States v. Williams,* 900 F.2d 823, 825 (5th Cir.1990): " 'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." (Citations omitted). If the proffer fits in to the "intrinsic" category, evidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof charged in the indictment. *See United States v. Masters,* 622 F.2d 83, 86 (4th Cir.1980) (stating evidence is admissible when it provides the context of the crime, "is necessary to a 'full presentation' of the case, or is ... appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the "res gestae" ' "). (Citations omitted). It seems doubtful this case could have been presented appropriately without showing when and how the young victim received the injuries that appeared

on his body. Evidence the defendant was responsible for all the injuries to the victim would seem to " 'complete the story of the crime.' " *Masters,* 622 F.2d at 86. (Citation omitted). Indeed, evidence admissible for one of the purposes specified in Rule 404(b) and *res gestae* not always is separated by a bright line. *See United States v. Cook,* 745 F.2d 1311, 1317–18 (10th Cir. 1984), *cert. denied,* 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985).

*LaRock,* 196 W.Va. at 312 n. 29, 470 S.E.2d at 631 n. 29; *see also State ex rel. Kitchen v. Painter,* 226 W.Va. 278, 293, 700 S.E.2d 489, 504 (2010) ("This evidence is inextricably intertwined with the offense ... [and] is crucial to explaining the sequence of events immediately prior to the attack on the victims. Thus, the evidence is necessary to provide context and to complete the story of the crime.").

Based on the foregoing authorities, we find that evidence of Jonathan B.'s illegal drug and alcohol use is inextricably intertwined with the alleged rape. The evidence is crucial to explaining the sequence of events leading up to the alleged rape, and the evidence is essential in providing the complete story of the crime by proving its immediate context. Therefore, the evidence is admissible as part of the *res gestae* of the alleged rape, and no *McGinnis* hearing was required with regard to this evidence. We conclude that the circuit court did not commit error by not holding a *McGinnis* hearing to examine the admissibility of the evidence of Jonathan B.'s illegal drug and alcohol use.

### IV.

### CONCLUSION

For the reasons set forth above, this Court reverses the circuit court's order entered December 16, 2010, which denied Jonathan B.'s motion for a new trial. This case is remanded to the Circuit Court of Mineral County for further proceedings consistent with this opinion.

Reversed and remanded.