# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent,**

**vs.)  No. 18-0340** (Cabell County 09-F-217)

**Edward Allen Mazzei,**
**Defendant Below, Petitioner**

**FILED**

**March 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Edward Allen Mazzei, by counsel Richard W. Weston, appeals the Circuit Court of Cabell County's March 19, 2018, second amended order sentencing him to a cumulative term of incarceration of ten years following his conviction of five counts of possession of material depicting minors engaged in sexually explicit conduct. Respondent State of West Virginia, by counsel Elizabeth Grant, filed a response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying his motions to suppress because the State illegally seized and searched his property, he did not voluntarily consent to a search of external media storage, and the exclusionary rule bars evidence of the initial illegal search and seizure, the search warrant, and his subsequent confession.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2007, the West Virginia State Police began an investigation into allegations that petitioner possessed child pornography. According to the record, the police received two factually specific anonymous tips that petitioner was very experienced with computers, including encryption, and possessed thousands of images of child pornography that were contained "on CDs or Disks and [were] stored separately from his hard drive."

On August 14, 2007, Troopers First Class Robert Boggs and Michael Pardee, both of the West Virginia State Police, arrived at petitioner's home and found petitioner and his wife in their vehicle outside the residence. Trooper Boggs requested that petitioner exit the vehicle to speak with him, and petitioner complied. According to Trooper Boggs's testimony, he explained to petitioner "in detail the tip that we had received and how very specific it was" and "asked [petitioner] for consent to search his house for this child pornography for the material that was listed in the tip." Petitioner then agreed to permit the officers to search his residence and executed a consent form that granted them permission to "conduct a complete search" of the

1

home.

Upon entering the home, Trooper Boggs brought computer hardware to aid in the search. Petitioner then directed Trooper Boggs to his computer room which contained an "overwhelm[ing] . . . amount of digital data" for Trooper Boggs to review. Per Trooper Boggs's testimony, it was apparent that petitioner "knew something about computers" beyond simple computer literacy. During the search, petitioner was free to move about the home and even entered and exited the computer room. Ultimately, Trooper Boggs encountered a CD that, when inserted into his laptop, contained "a chunk of free space" which he believed was odd. Using software on his laptop, Trooper Boggs was able to "carve" the free space, which revealed approximately sixty-two images of prepubescent children engaged in various sexual acts.[1] According to Trooper Boggs, in performing this carving function, the software on his laptop automatically created a copy of the information and saved it. Trooper Boggs then placed the CD back where he found it and did not tell petitioner about his discovery.

Trooper Boggs then sought a search warrant based on the tip and his personal observations.[2] According to the record, the magistrate who issued the search warrant did not view any photographs from the CD in question, nor did Trooper Boggs submit them in support of his warrant application. Based on the contents of Trooper Boggs's affidavit, the magistrate authorized a search warrant, and the police executed that warrant. During the warrant's execution, police seized the CD in question, in addition to other images of child pornography ultimately totaling several hundred images.

After petitioner's arrest he was arraigned and then transported to the regional jail. After Trooper Boggs advised petitioner of his *Miranda*[3] rights, petitioner confessed to possessing child pornography on the CD in question. Thereafter, petitioner was indicted on ten counts of

---

[1] In his testimony, Trooper Boggs described the act of "carving" the CD in question. According to Trooper Boggs, a file on the CD labeled "Drive Space" or "Drive Free Space," was described as "a bunch of ones and zeros, a bunch of hex. There was nothing discernible or nothing readable about its original nature." Accordingly, Trooper Boggs "carved" the data by searching it for "file headers and file formats from the very first zero to the last" in an attempt to "carve[] out individual files." This technique yielded the pictures at issue.

[2] This included observations Trooper Boggs made that were unrelated to the CD at issue, including the fact that "the very first words upon meeting with [petitioner] and explaining the tip was – the very first thing he stated was, 'I was sexually abused as a child.'" Additionally, one of the tips police received indicated that petitioner possessed children's clothing despite the fact that he did not have children. Upon petitioner's voluntary consent to search the home, the officers discovered children's clothing in petitioner's computer room that petitioner indicated he used for therapy. When executing the search warrant, police found that the children's clothing had been removed.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

possessing material depicting minors engaged in sexually explicit conduct. Petitioner filed a motion to suppress the CD and his confession.

In August of 2013, the circuit court held a hearing on petitioner's motion to suppress the CD. During the hearing, Trooper Boggs testified that the State Police's common practice is to view digital media on a forensic computer, rather than the suspect's computer, because "the [d]efendant's computer . . . could potentially be evidence, and we do not want to change anything on his hard drive. And the mere use of that hard drive you are actually changing a lot of data." Trooper Boggs also indicated that this practice addresses concerns over the possible deletion of data if the suspect's computer were used. During the hearing, Trooper Boggs confirmed that he did not inform petitioner that he would copy any data found in the home nor did he obtain petitioner's consent to copy such data. Following the hearing, the circuit court denied petitioner's motions. In December of 2013, the circuit court held a hearing on petitioner's motion to suppress his statement, which it also denied. By order entered on January 14, 2016, the circuit court memorialized its denials in a consolidated order.

Eventually, petitioner entered a conditional guilty plea to five counts of the indictment pursuant to a plea agreement with the State. In exchange, the State agreed to dismiss the remaining counts. Prior to sentencing, petitioner appealed the circuit court's order denying his motions to suppress. This Court, however, dismissed petitioner's appeal as interlocutory by order entered on February 14, 2017.

In August of 2017, petitioner was sentenced to a cumulative term of ten years of incarceration for his convictions. The circuit court subsequently entered two amended sentencing orders for purposes of appeal. It is from the second amended sentencing order that petitioner appeals.

We have previously held that

> [w]hen reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. Pt. 1, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996). On appeal, petitioner challenges the circuit court's denial of his motion to suppress the evidence obtained by virtue of the initial search of his home on the grounds that the search exceeded the reasonable scope of his consent and that the police unlawfully seized his property without his consent. Upon our review, however, we find no error in the circuit court's ruling.

According to petitioner, he did not voluntarily consent to a search of external media

3

storage, such as the CD at issue. As such, he argues that the search of those items was beyond the scope of any consent given.[4] In addressing consent to search, this Court has held as follows:

> "The general rule is that the voluntary consent of a person who owns or controls premises to a search of such premises is sufficient to authorize such search without a search warrant, and that a search of such premises, without a warrant, when consented to, does not violate the constitutional prohibition against unreasonable searches and seizures." Syl.Pt. 8, *State v. Plantz*, 155 W.Va. 24, 180 S.E.2d 614 (1971), *overruled in part on other grounds by State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981).

Syl. Pt. 1, *State v. Buzzard*, 194 W. Va. 544, 461 S.E.2d 50 (1995). Given that petitioner does not contest the voluntary nature of his consent to search the premises, it is unnecessary to analyze the criteria necessary to determine when such voluntary consent is given. *See id.* at 545-46, 461 S.E.2d 51-52, syl. pt. 3 (setting forth six criteria to address when evaluating the voluntariness of consent to search). Instead, petitioner simply challenges the scope of the consent given and argues that it did not extend to physical storage such as the CD at issue. We do not agree.

As the United States Supreme Court has held, "[t]he touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citing *Katz v. United States*, 389 U.S. 347, 360 (1967)). Moreover, the Supreme Court held that "[t]he Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Id.* (citing *Illinois v. Rodriguez*, 497 U.S. 177 (1990)). Accordingly, the Supreme Court has "long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Id.* at 250-51 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). Based on these principles, the Supreme Court instructed that "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* at 251 (citing *Rodriguez*, 497 U.S. at 183-89; *Florida v. Royer*, 460 U.S. 491, 501-02 (1983)). Indeed, in addressing this issue, this Court has similarly held that

---

[4]On appeal, petitioner does not challenge the voluntariness of his consent to search the home or the computers therein. While petitioner does make passing references to alleged coercion or other potential issues with his general consent to search the home, such as his assertion that "[i]t is questionable whether he voluntarily consented to the search of his house and computer based on his state of mind of nervousness" and other factors, petitioner does not raise a specific assignment of error challenging the voluntariness of the consent to search, generally. Instead, petitioner's assignment of error is directed specifically at the State's search of the CD in question and his assertion that he did not consent to a search this broad in scope. As such, we address only the propriety of the State's search of the CD in question and assume, based on petitioner's failure to raise the issue, that the general consent to search the residence was voluntarily given.

"[c]onsent to search may be implied by the circumstances surrounding the search, by the person's prior actions or agreements, or by the person's failure to object to the search. Thus, a search may be lawful even if the person giving consent does not recite the talismanic phrase: 'You have my permission to search.'" Syl. pt. 1, *State v. Flippo*, 212 W.Va. 560, 575 S.E.2d 170 (2002).

Syl. Pt. 4, *State v. Jonathan B.*, 230 W. Va. 229, 737 S.E.2d 257 (2012).

Based on the record before us, we find that the State's search of the CD in question was reasonable, given the totality of the circumstances. In addition to the fact that the general consent to search that petitioner executed granted the officers the right to "conduct a complete search" of his residence, the record shows that Trooper Boggs also obtained a more specific consent from petitioner orally. In requesting petitioner's consent to search the home, Trooper Boggs "explained to him *in detail* the tip we had received and how very specific it was, and we asked for consent to search his house for this child pornography for the material *that was listed in the tip*." (Emphasis added). The record is clear that the tip Trooper Boggs was acting upon was very explicit about where petitioner stored the illicit images. This tip specifically stated that "[m]ost of the stuff [petitioner] owns is on CDs or Disks and are stored separately from his hard drive."

On appeal, petitioner attempts to limit the scope of the voluntary consent he gave to search by highlighting testimony from Trooper Boggs wherein he addresses his discussion with petitioner in terms of "computer images" or "digital images basically that were on a computer." According to petitioner, this establishes that the scope of his consent was limited to his computers and, therefore, law enforcement's search of the CD was outside the scope of his consent. We find, however, that based on a totality of the circumstances it is clear that Trooper Boggs obtained petitioner's consent to a broad search of the entire home and that he further expressed to petitioner that he sought images of child pornography consistent with the tip received by law enforcement, which explicitly outlined that they would be stored on "CDs or Disks" separate and distinct from petitioner's computer. As such, we find that a reasonable person would have expected Trooper Boggs to conduct a search of digital materials within the home, including CDs.

In regard to the State's search of the CD itself, petitioner additionally argues that Trooper Boggs's use of forensic software was not allowed without petitioner's knowledge and consent. Specifically, petitioner argues that "[t]he Fourth Amendment does not allow searches with devices that are not in common use without a warrant, or co-extensively, without consent." In making this argument, petitioner relies on the United States Supreme Court decision of *Kyllo v. U.S.*, 533 U.S. 27 (2001). We find, however, that *Kyllo* is inapplicable, as that case concerned law enforcement's use of thermal imaging on a defendant's home without consent or a warrant. Again, based on the totality of the circumstances, we find that a reasonable person would have understood that a search for digital images of child pornography, including a search of external storage such as a CD, would require the use of a computer and associated software. Accordingly,

we find no error in the circuit court's denial of petitioner's motion to suppress.[5]

In petitioner's second assignment of error, he argues that when Trooper Boggs transferred data from the CD to his computer, he illegally seized the images. According to petitioner, Trooper Boggs "could not have viewed the images on the CD without the copying to his own computer" and petitioner never gave his consent for any such seizure. Despite making this argument, petitioner acknowledges that the record does not support his assertion, as he also admits that "Trooper Bogg[s's] testimony was contradictory as to whether this seizure occurred before or after he viewed the images."

Ultimately, we decline to address the issue of whether Trooper Boggs's transfer of data from petitioner's CD to his computer constituted a seizure for several reasons. First, as noted above, petitioner acknowledges that the record does not support his position that Trooper Boggs would have been unable to view the files in question had he not allegedly seized the data first. Indeed, Trooper Boggs never asserted that this was the case and, in fact, simply indicated that

---

[5]In support of this assignment of error, petitioner additionally argues that the circuit court's ruling on his motion to suppress "is not [c]onsistent with West Virginia [l]aw." To advance this argument, petitioner cites West Virginia Code §§ 62-1A-10(a)(2) and (3), which provide that

> (a) A law-enforcement officer who stops a motor vehicle for an alleged violation of a traffic misdemeanor law or ordinance may not search the vehicle unless he or she: . . .
>
>     . . . .
>
> > (2) Obtains the written consent of the operator of the vehicle on a form that complies with section eleven [§ 62-1A-11] of this article; or, alternatively,
> >
> > (3) Obtains the oral consent of the operator of the vehicle and ensures that the oral consent is evidenced by an audio recording that complies with section eleven of this article.

Relying solely on this statute, petitioner argues that "[i]f West Virginia has decided to extend these protections to motor vehicles, certainly they should extend to our refuge, the castle." We find, however, that petitioner's reliance on this statute is entirely misplaced, for several reasons. First, this statute plainly applies to motor vehicles, not homes, and petitioner has not cited to any relevant statute governing private dwellings. More importantly, although petitioner argues that the consent form he signed did not comport with the requirements of this statute and, thus, was legally deficient, petitioner ignores subsection (d) of that statute, which provides that "[f]ailure to comply with the provisions of this section shall not, standing alone, constitute proof that any consent to search was involuntary." For these reasons, we find that petitioner's reliance on this statute does not entitle him to relief.

6

"the simple act of processing" the CD resulted in his forensic computer "automatically sav[ing]" the information. Given that the transfer of data appeared to be incidental to Trooper Boggs viewing it, petitioner has failed to establish that, without the alleged seizure, Trooper Boggs could not have viewed the images from the CD.

Second, the record is clear that any alleged seizure had no effect on the outcome of the matter. According to the record, Trooper Boggs did not submit any of the images from the CD in support of his application for a search warrant of petitioner's home. Instead, Trooper Boggs relied on his own observations about petitioner and the images he viewed to support his application. As such, we find no error.

Finally, petitioner argues that because the officer's initial search of his home exceeded the scope of his consent and because he alleges that law enforcement engaged in an unlawful seizure of the data found on the CD, "the images seized the next day pursuant to the search warrant are also inadmissible as fruits of the poisonous tree." We do not find this argument compelling, however, given the analysis above. In further arguing that his statement to police should have been suppressed, petitioner argues that "[i]f the initial Fourth Amendment violation did not occur, the officers would not have discovered any images and [petitioner] would not have been arrested" and would not have given the statement to law enforcement. Again, given that we find that no Fourth Amendment violation occurred during law enforcement's initial search of petitioner's home, we find that petitioner is entitled to no relief in this regard.[6]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 15, 2019

---

[6]In his brief on appeal, petitioner does not independently challenge the circuit court's denial of his motion to suppress his statement to law enforcement on any ground other than that it was a direct result of law enforcement's initial search of his home. Although petitioner does assert that he "requested a lawyer 'throughout'" his interaction with law enforcement and that the officer who took his statement "did not use the standard State Police form" when memorializing his *Miranda* waiver, petitioner nonetheless admits he was given a *Miranda* warning before giving his statement. He also makes it clear that his argument concerning the requirement that his statement be suppressed is directly tied to his allegation that the initial search was illegal by presenting this argument under his assignment of error alleging that "The Exclusionary Rule Bars Evidence Of The Initial Illegal Search And Seizure, The Search Warrant, And Defendant's Subsequent Statement." As such, it is clear that petitioner is not challenging the admission of his statement on any grounds other than that it should have been excluded because it flowed from what he believes was an illegal search and seizure.

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison