IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2024 Term

**FILED**

**November 14, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 22-0013
_____

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

KEITH JASON WALKER,
Defendant Below, Petitioner.

_____

Appeal from the Circuit Court of Barbour County
The Honorable Shawn D. Nines, Judge
Case Nos. 19-F-71 & 21-F-28

AFFIRMED
_____

Submitted: October 23, 2024
Filed: November 14, 2024

Jeremy B. Cooper, Esq.
Blackwater Law PLLC
Aspinwall, Pennsylvania
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
Michael R. Williams, Esq.
Solicitor General
William E. Longwell, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE WOOTON delivered the Opinion of the Court.

JUSTICE BUNN concurs and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1.      "Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986) [, *overruled on other grounds as stated in State v. Edward Charles L*, 183 W. Va. 641, 398 S.E.2d 123 (1990)]. After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence." Syl. Pt. 2, *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994).

2      "Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incidents giving rise to the indictment. To the extent that this conflicts with our decision in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986), it is overruled." Syl. Pt. 2, *State v. Edward Charles L*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

3.      "The granting of a continuance is a matter within the sound discretion of the trial court, though subject to review, and the refusal thereof is not ground for reversal unless it is made to appear that the court abused its discretion, and that its refusal has worked injury and prejudice to the rights of the party in whose behalf the motion was made." Syl. Pt. 1, *State v. Jones,* 84 W.Va. 85, 99 S.E. 271 (1919).

**WOOTON, Justice:**

Petitioner Keith Jason Walker ("the petitioner") was convicted in the Circuit Court of Barbour County, West Virginia, of two counts of sexual assault in the first degree,[1] three counts of sexual abuse in the first degree,[2] five counts of sexual abuse by a parent, guardian or custodian,[3] and one count of displaying obscene material to a minor.[4] In the court's order entered on December 8, 2021, he was sentenced to consecutive terms of imprisonment of 25 to 100 years on the convictions for sexual assault, 5 to 25 years on the convictions for sexual abuse, and 10 to 20 years on the convictions for sexual abuse by a parent, guardian or custodian, and a concurrent term of 5 years on the conviction for display of obscene material, for an effective sentence of 115 to 375 years.

The petitioner now appeals, alleging the following assignments of error as well as an assignment of cumulative error: 1) the circuit court erred by admitting evidence of the petitioner's consumption of certain pornography to prove a lustful disposition towards children, without offering a limiting instruction; 2) the court erred by denying the petitioner's motion for a continuance and/or psychological evaluation of the minor alleged victim shortly before trial; 3) the court erred by answering two juror questions during

---

[1] *See* W. Va. Code § 61-8B-3 (2020).

[2] *See id.* § 61-8B-7 (2020).

[3] *See id.* § 61-8D-5(a) (2020).

[4] *See id.* § 61-8A-2 (2020).

1

deliberation in a manner that was legally infirm, highly prejudicial to the petitioner, and without making a record of the parties' respective positions on the answers; 4) the petitioner has been deprived of due process of law as a result of the inordinate delay caused by the misconduct of the (former) court reporter, an agent of the State; and 5) the petitioner has been deprived of due process as a result of the loss of certain transcripts. After careful review of the parties' briefs and oral arguments, the appendix record, and the applicable law, we find no error in the circuit court's decision and therefore affirm.

## I. Facts and Procedural Background

Our overview of the underlying facts of this case will be brief, as the petitioner does not challenge the sufficiency of the evidence when such evidence is considered in a light most favorable to the State, the prevailing party below. *See, e.g.*, Syl. Pt. 2, in part, *State v. Harden*, 223 W. Va. 796, 679 S.E.2d 628 (2009) ("The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt.").

The initial charges in this case resulted from disclosures made by C.M., an eight-year-old female who lived during the relevant time period with her mother and the mother's boyfriend, the petitioner, in Philippi, Barbour County, West Virginia. In a forensic interview of C.M. that took place at the Harrison County Child Advocacy Center

2

on July 25, 2018, the child said that her mother regularly left her in the petitioner's care and that while in his care she was forced to perform oral copulation on him. C.M. described this in detail, explaining that her ordeal began when the petitioner said, "let's play the taste game," after which he "would lay [C.M.] on the bed . . . put a towel or pillow over her eyes[,]" and put his penis in her mouth – supposedly a banana covered in strawberry syrup – moving it back and forth. C.M. further described the "white stuff" that came out of the petitioner's penis during this assault, and the numerous assaults that followed, as "slimy" and "weird."

On June 25, 2019, as a result of C.M.'s disclosures, the Barbour County Grand Jury returned an eight-count felony indictment in criminal case No. 19-F-71, charging the petitioner with one count of first-degree sexual assault, three counts of first-degree sexual abuse, and four counts of sexual abuse by a parent, guardian or custodian. The petitioner was arraigned on the charges on July 19, 2019, and subsequently placed on home confinement as a condition of his bond. However, on December 12, 2019, his home confinement was revoked on the ground that although employed, the petitioner "refused to pay anything toward the home confinement fees" and instead used his discretionary funds to pay the living expenses of C.M.'s mother, who was anticipated to be a witness in the case.[5]

---

[5] It was also alleged that the petitioner was totally uncooperative with the terms and conditions of his bond, refusing to wear a monitoring device and refusing to allow access

The trial was originally set to be held on or about January 7, 2020, but was continued; the appendix record is silent as to whether this first continuance was on motion of the petitioner or the State. The trial was rescheduled for October 14, 2020, but was again continued on motion of the State. It was then rescheduled for January 25, 2021, but continued for reasons not apparent on the face of the record (although there is some suggestion that the petitioner may have had COVID-19). It was then rescheduled for April 19, 2021, but later continued on motion of the petitioner and rescheduled for July 26, 2021. Thereafter, the petitioner moved to continue the trial for what would have been the fifth time, which motion was denied by the circuit court. *See* discussion *infra*.

On March 8 and March 22, 2021, the circuit court held *McGinnis*[6] hearings to address the State's notice of intent to offer certain evidence, including, inter alia, evidence which had been seized from the petitioner's computer, pursuant to Rule 404(b).[7] More specifically, the evidence sought to be admitted was a 1,600 item listing of the petitioner's search history on pornography websites evidencing his interest in "daddy-

---

to his phone; and further that he was so combative with community corrections staff that no one would meet with him one-on-one.

[6] *See State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994) (discussed *infra* in greater detail).

[7] *See* W. Va. R. Evid. 404(b), which provides in subsection (2) that evidence of prior crimes, wrongs, or other acts may be admissible for "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

4

daughter" images, "young teen" images, and "pregnant" images. After hearing evidence and the arguments of counsel, the court excluded any reference to the searches relating to pregnancy-related images, deeming them irrelevant, but admitted the list of titles of images of "daddy-daughter" and "young teen" pornography, finding that "the ones where the daddy/daughter issues[,] the ones with teen information in them or any other information in them, all would go to the defendant's potential lustful disposition for children under the age of 18." The court further found that the relevance of the evidence outweighed its prejudicial impact. For purposes of our discussion *infra*, it is significant to note that the expert witness who had conducted a forensic examination of the petitioner's computer, retrieved the hard drive, and prepared the listing of "daddy-daughter" and "young teen" images in the petitioner's search history, had reviewed only the titles of the images, not their actual content.

As the April 19, 2021, trial date drew near, C.M. made additional disclosures, specifically, that the petitioner had vaginally penetrated her on at least one occasion and that he had viewed pornography with her.[8] On April 14, 2021, at a pretrial hearing, the

_____

[8] C.M. testified at trial that there were two reasons she had never mentioned the vaginal penetration in earlier interviews. First, not until she had recently had sex education in school did she realize exactly what had happened to her, which she described as involving a "stretching" feeling, pain, and blood; prior to learning about the mechanics of intercourse she neither understood what the petitioner had done to her nor had the words to describe it. Second, no one had ever asked her about vaginal penetration, and she hadn't thought to volunteer that information because she believed that her interviewers' only interest was in the "tasting game." An expert witness for the State testified that it is common for young children who are being questioned about traumatic events, especially

5

petitioner moved for a continuance to enable him to investigate the new disclosures. The State did not oppose the motion because it had not yet secured a second or superseding indictment based on the new disclosures, which it intended to do, with a plan to try the initial charges and the new charges together. The petitioner's motion for continuance was granted and the trial was rescheduled for July 26, 2021.

On May 24, 2021, based on C.M.'s new disclosures, the Barbour County Grand Jury returned a second three-count felony indictment in criminal case No. 21-F-28, charging the petitioner with one count of sexual assault in the first degree, one count of sexual abuse by a parent, guardian or custodian, and one count of displaying obscene material to a minor.

On July 1, 2021, the petitioner moved to continue the trial in order to investigate new evidence his counsel had received on or about June 25, 2021: that C.M.'s foster mother had asked for her to be removed from the home for a variety of reasons and that C.M. had professed to being "uncomfortable being alone with the foster father," a statement the foster mother found to be concerning. After reviewing this information, the circuit court denied the motion to continue, concluding that the grounds therefor were insufficient, that all of the information could be elicited at trial, and that "[t]his case has

---

those who are suffering from post-traumatic stress disorder ("PTSD"), to provide information only in response to specific questions.

6

gone on for an extended period . . . [and] there is a need to finally get these matters done." *See* discussion *infra*.

The trial began on July 26, 2021, and concluded on July 29, 2021, during which time the State called fourteen witnesses and the defense called five witnesses. The primary thrust of the petitioner's defense was an attempt to demonstrate that C.M. is a manipulator and a liar, and more specifically that she has a history of telling lies and making allegations of sexual impropriety in an effort to "get her own way." In that regard, social service records from the State of Washington, where the family had lived prior to moving to West Virginia in 2016, detailed allegations of physical abuse (e.g., hair-pulling) that C.M., then a very young child, levelled primarily against her mother. These allegations had been investigated and found not to be supported. Additionally, as noted *supra*, C.M's foster mother in West Virginia testified that she notified authorities that C.M. said she was uncomfortable being alone with the foster father; the foster mother was concerned that such a statement could create a problem, although in her testimony she did not support defense counsel's suggestion that the statement was a veiled accusation of sexual impropriety on the part of the foster father. Further, evidence was adduced to show that C.M. has told fibs, lies, and/or tall tales on numerous occasions, is a difficult child by any measure, has been so defiant and disruptive in foster placements that at least two foster families have requested termination, and at one point spent significant in-patient time at River Park, a psychiatric facility for juveniles which is located in Huntington, West Virginia. Nonetheless, despite a lengthy, withering cross-examination in which she was confronted

7

with seemingly every bad thing she had ever said or done in her short life, C.M. – who at the time of trial had just turned twelve – testified as to the petitioner's sexual assault and abuse of her in a manner that was wholly consistent with her earlier disclosures, and did not waver in that crucial testimony.

The jury, having heard all of the evidence, convicted the petitioner of all counts in the indictment. Thereafter, the circuit court sentenced him to an effective term of 115 to 375 years in prison. This appeal followed.

## II. Standard of Review

Because different standards of review apply to different issues in this case, we will discuss them as they apply to our analyses of the issues.

## III. Discussion

### A. Rule 404(b) Evidence

The petitioner's first assignment of error is that the circuit court committed what he characterizes as prejudicial error when it admitted testimony and evidence of his internet search history of child pornography without giving the jury any limiting instruction as to the purposes for which it could consider the evidence. Further, the petitioner contends that the evidence was inadmissible in any event because it was nothing more than a list of titles of pornographic images of children; the State failed to prove that the petitioner had actually looked at any of the images in question, or that any of the purported children in

8

the images were actually underage. We review these arguments pursuant to the standard of review set forth in *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996):

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

196 W. Va. at 310-11, 470 S.E.2d at 629-30.

The court's ruling with respect to admission of this evidence came after two hearings held pursuant to the roadmap laid out by this Court in *McGinnis*:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986) [, *overruled on other grounds as stated in State v. Edward Charles L*, 183 W. Va. 641, 398 S.E.2d 123 (1990)]. After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403

9

of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

193 W. Va. at 151, 455 S.E.2d at 520, Syl. Pt. 2. We have explained that on appeal from a *McGinnis* ruling, "'this Court will 'review the trial court's decision to admit evidence pursuant to Rule 404(b) under an abuse of discretion standard.'" *State v. Willett*, 223 W. Va. 394, 397, 674 S.E.2d 602, 605 (2009) (citing *McGinnis,* 193 W.Va. at 159, 455 S.E.2d at 528). Further,

Our function on . . . appeal is limited to the inquiry as to whether the trial court acted in a way that was so arbitrary and irrational that it can be said to have abused its discretion. In reviewing the admission of Rule 404(b) evidence, we review it in the light most favorable to the party offering the evidence, in this case the prosecution, maximizing its probative value and minimizing its prejudicial effect.

*Id*. With this standard of review in mind, we turn to the petitioner's arguments in the order he presents them.

The petitioner first contends that the evidence considered by the circuit court at the pretrial hearings was insufficient to satisfy the three-part test established in *McGinnis*. *See* 193 W. Va. at 151, 455 S.E.2d at 520, Syl. Pt. 2. Accordingly, we must review the evidence insofar as it is relevant to any or all prongs of that test.

10

**1. Did the State establish by a preponderance of the evidence that the acts or conduct occurred, and that the defendant committed the acts?**

The undisputed testimony showed that the 1,600-item list of the titles of pornographic images of children contained in the petitioner's internet search history was based on information retrieved from a lawful search of the petitioner's computer;[9] in this regard, there was no evidence to suggest that the computer belonged to anyone else or that its search history was attributable to anyone else. Further, the undisputed testimony was that the search history was from a four-month window of time, January 10 through April 2, 2016, which fell within or just shortly before the time frame set forth in both indictments.[10] With those facts clearly established, the circuit court could reasonably conclude that the evidence was sufficient to support an inference – and a compelling one – that the petitioner would not have searched a pornographic website hundreds of times for "daddy-daughter" and "young teen" images if he didn't intend to look at those images, or if the images didn't show exactly what they purported to show: underage children engaged in sexual acts and situations. Thus, we easily find that the first prong of the *McGinnis* test was satisfied.

---

[9] There is no challenge to the constitutional validity of the search.

[10] It is undisputed that the petitioner and his family moved to West Virginia in 2016, but the record is unclear as to the exact month and date. The indictment charges that the offenses alleged occurred between an unspecified date in 2016 and an unspecified date in 2018.

**2.** **Did the circuit court reasonably find the evidence to be relevant under Rules 401 and 402 of the West Virginia Rules of Evidence, and conduct the balancing test required under Rule 403?**

It is well established in our law that,

> [c]ollateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment. To the extent that this conflicts with our decision in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986), it is overruled.

*Edward Charles L*, 183 W. Va. at 643, 398 S.E.2d at 125, Syl. Pt. 2. Thus, this Court has determined that collateral acts that show the perpetrator had a "lustful disposition towards children generally" is relevant provided such evidence is "reasonably close in time to the incidents giving rise to the indictment." *See id.*

Here, the petitioner does not directly dispute the relevance of evidence showing that he searched the internet for pornographic "daddy-daughter" images, and indeed, we are hard-pressed to imagine an argument that could plausibly be made. Rather, the petitioner focuses his argument on the admission of evidence showing that he searched for "young teen" images. In this regard, he contends that the evidence was not relevant because the victim in this case, C.M., was not a "young teen"; during the relevant time frame from 2016 to 2018, she was only 7, 8, or 9 years old. The circuit court made no such age distinction, concluding that the "the ones [titles] where the daddy/daughter issues[,]

12

the ones with teen information in them or any other information in them, all would go to

the defendant's potential lustful disposition for *children under the age of 18*." (Emphasis

added).

Because *Edward Charles L.* allows for the admission of collateral acts to

show a lustful disposition toward children so long as that evidence "relates to incidents

reasonably close in time to the incident(s) giving rise to the indictment[,]" 237 W. Va. at

643, 791 S.E.2d at 125, Syl. Pt. 2, in part, we decline to address this argument. Instead, we

conclude that the circuit court's initial findings that the evidence was relevant under Rule

401 and its probative value was not substantially outweighed by a danger of unfair

prejudice under Rule 403, were well within the ambit of the court's considerable discretion.

Further, a review of the record shows that the court carefully performed the balancing

function required by *McGinnis*, reviewing all of the evidence the State sought to admit

pursuant to Rule 404(b) and admitting some such items of evidence while excluding others

on the ground that its probative value was substantially outweighed by a danger of unfair

prejudice.[11] *See* 193 W. Va. at 151, 455 S.E.2d at 520, Syl. Pt. 2.

### 3. Was a limiting instruction given when the evidence was offered and/or in the court's closing charge to the jury?

---

[11] For example, the State sought to admit evidence that the petitioner had abused his first wife and stepdaughter, as well as evidence tending to show – at least in the State's view – that the petitioner is a sex addict with a constant need for gratification. The circuit court found all of this evidence to be relatively unconvincing and remote in time, and thus outweighed by its prejudicial impact. *See* W. Va. R. Evid. 403.

It is undisputed that the court did not give a limiting instruction to the jury at any time during the trial. It is also undisputed that the petitioner's counsel never asked for an instruction to be given. Thus, we must determine whether the court's failure to give a limiting instruction sua sponte was plain error warranting a reversal, or whether the court's failure to give an instruction was harmless under the facts and circumstances of this case. *See McGinnis*, 193 W. Va. at 151, 455 S.E.2d at 520, Syl. Pt. 2, in part; *see also State v. White*, No. 14-0918, 2015 WL 7628721, at *5 (W. Va. Nov. 20, 2015) (memorandum decision) ("we find that the circuit court's failure to give a limiting instruction at the time the text messages were admitted into evidence at trial was harmless error."); *State v. Palmer*, No. 18-0206, 2019 WL 5853259, at *7 (W. Va. Nov. 8, 2019) (memorandum decision) ("Petitioner concedes that he did not request a limiting instruction at this time, but claims that the circuit court's failure to provide one was plain error. Upon our review, we find that any error was harmless under the facts of this case.").

The State correctly argues that the language of *McGinnis* in this regard is permissive, not mandatory:

> If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it *should* instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction *should* be given at the time the evidence is offered, and we *recommend* that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

14

*McGinnis*, 193 W. Va. at 151, 455 S.E.2d at 520, Syl. Pt. 2, in part (emphasis added). The

petitioner counters that in *State v. Jonathan B.*, 230 W. Va. 229, 737 S.E.2d 257 (2012),

this Court reversed a defendant's conviction in a strikingly similar case on the ground that

the circuit court's review of proffered Rule 404(b) evidence did not satisfy the requirement

that "where an offer has been made of lustful disposition evidence pursuant to [*Edward*

*Charles L.*] the reviewing court must evaluate the admissibility of that evidence as required

by *Edward Charles L.* and [*McGinnis*]." 230 W. Va. at 237-38, 737 S.E.2d at 265-66.

Specifically,

> [t]he hearing was not *in camera*, the discussion of the pornographic file names in this hearing was pursuant to Jonathan B.'s motion to exclude the evidence, the court did not describe whether its findings were by a preponderance of the evidence, *and the court did not give a limiting instruction regarding the evidence when it was first presented to the jury during trial.* Perhaps the most problematic omission of the circuit court, however, was its failure to consider or discuss the requirement of *Edward Charles L.* that admissible Rule 404(b) evidence be close in time to the incident giving rise to the indictment.

230 W. Va. at 238, 737 at 266 (emphasis added).[12]


We reject the petitioner's argument that the circuit court's failure to give a

limiting instruction as to the purposes for which the Rule 404(b) evidence could be

considered was "clear error" under *Jonathan B.* First, whether or not an instruction was

---

[12] The circuit court did give a limiting instruction during its charge to the jury. *See Jonathan B.*, 230 W. Va. at 238 n.11, 737 S.E.2d at 266 n. 11.

requested cannot be ascertained from the text of the Court's opinion in that case. Second, nothing in the opinion supports a conclusion that the failure to give an instruction, standing alone, was deemed to be reversible error; rather, this failure was one of numerous procedural failures on the circuit court's part, which included a failure to hold an in camera hearing wherein the *McGinnis* requirements were properly considered. *See* 230 W. Va. at 238, 737 S.E.2d at 266 (citing *McGinnis*, 193 W. Va. at 151, 455 S.E.2d at 520, Syl. Pt. 2). Indeed, the petitioner acknowledges that "[i]n *Jonathan B*., the lower court essentially failed to apply a 404(b) analysis at all, which the Petitioner concedes is not directly on point with what happened here." Third, even assuming, arguendo, that the petitioner had a right under *McGinnis* to a limiting instruction, regardless of whether an instruction was requested, such right is not among those "[c]ertain constitutional rights . . . so inherently personal and so tied to fundamental concepts of justice that their surrender by anyone other than the accused acting voluntarily, knowingly, and intelligently would call into question the fairness of a criminal trial." *State v. Neuman*, 179 W. Va. 580, 584, 371 S.E.2d 77, 81 (1988) (citation omitted).

Thus, we turn again to the specific language of *McGinnis*, which frames the giving of a limiting instruction at the time Rule 404(b) evidence is introduced as something the circuit court *should* do, and the giving of an instruction during the court's closing charge to the jury as something that is *recommended*. Indeed, we specifically held in *McGinnis* that "the trial court is *under no obligation to give a limiting instruction unless one is requested*. . . . but the absence of an effective limiting instruction will be considered by us

16

on appeal in weighing the prejudice ensuing from the erroneous admission of Rule 404(b) evidence." 193 W. Va. at 156-57, 455 S.E.2d at 525-26 (emphasis added).

There is no question that the giving of limiting instructions at both stages of the trial is best practice, and accordingly, we encourage circuit courts to give such instructions in all circumstances unless defense counsel objects. *See id.* (reiterating that it is "strongly recommended that the instruction be given unless it is objected to by the defendant[.]"). In the instant case, however, where the Rule 404(b) evidence was properly admitted after thorough consideration of all of the factors set forth in *McGinnis*, where there is no evidence that a limiting instruction was ever requested by the petitioner, and where there is no showing of any undue prejudice to the petitioner, the court's failure to give a limiting instruction cannot be deemed to be error. Further, having reviewed the transcript of a four-day trial in which nineteen witnesses testified, "we can say with fair assurance, after stripping the [allegedly] erroneous evidence from the whole, that the remaining evidence was independently sufficient to support the verdict and the jury was not substantially swayed by [any] error." *State v. Guthrie*, 194 W. Va. 657, 684, 461 S.E.2d 163, 190 (1995).

## B. Psychological Evaluation of Child Victim

The petitioner next argues that the circuit court erred by denying him a continuance of the July 26, 2021, trial date, which he sought for the purpose of having a psychological evaluation of C.M. performed to determine whether she had a psychological

17

disorder that blurred her ability to differentiate between truth and lie, as well as right and wrong. As set forth *supra*, the trial had originally been scheduled to begin eighteen months earlier, on January 7, 2020, but had been continued four times.[13] On or about June 25, 2021, a month before trial, the petitioner's counsel received information that C.M.'s current foster mother had written to Genesis Foster Care and Adoption Services ("Genesis") asking that C.M. be removed from her home because she was physically acting out with the other children in the home, arguing with her foster mother, and generally being combative. Further, the foster mother noted an incident which occurred when C.M. wanted to go out but her foster mother wanted her to stay home, whereupon C.M. protested that she felt "uncomfortable" being home alone with her foster father.

Seizing particularly on this last statement, contending that "implicit in [these words] is she feels she's the object of his sexual desires," the petitioner's counsel filed a motion for a continuance seeking to have a psychological and/or psychiatric examination done in order to determine whether C.M.'s alleged pattern of lies, deceit, and allegations of sexual impropriety were the result of some as-yet undiagnosed psychological condition. The motion was heard at the pretrial conference on July 1, 2021, at which time the circuit court reviewed the foster mother's written communication with Genesis and considered the arguments of counsel for the petitioner and the State. The court denied the motion, finding

---

[13] The parties agree that the lapse of time does not implicate the three-term rule of West Virginia Code section 62-3-21 (2020).

that C.M.'s "actions are not such that it would necessarily or even likely indicate that she has some sort of psychological or psychiatric problem that would render her incapable of testifying by reason of incompetency." The court further noted that all of the evidence concerning the records from the State of Washington, as well as evidence concerning the West Virginia foster placement, and anything else that demonstrated C.M.'s past lies and misbehavior, could be adduced at trial in order to impeach her credibility as a witness. Finally, the court noted that the trial had been continued multiple times, that a significant period of time had elapsed since the charges were initially brought, and that it was time for the matter to be resolved.

We review this alleged error pursuant to our long-established law:

> The granting of a continuance is a matter within the sound discretion of the trial court, though subject to review, and the refusal thereof is not ground for reversal unless it is made to appear that the court abused its discretion, and that its refusal has worked injury and prejudice to the rights of the party in whose behalf the motion was made.

Syl. Pt. 1, *State v. Jones,* 84 W.Va. 85, 99 S.E. 271 (1919); *accord State v. Dunn*, 237 W. Va. 155, 159, 786 S.E.2d 174, 178 (2016). The petitioner must demonstrate that the circuit court ignored "a material factor deserving significant weight," relied on "an improper factor," or "assessed all proper and no improper factors . . . [but] ma[de] a serious mistake in weighing them." *LaRock*, 196 W. Va at 307, 470 S.E.2d at 626.

19

Our inquiry here will necessarily focus on the grounds asserted by the petitioner in support of his motion: his request that the victim, C.M., be subjected to a psychological and/or psychiatric examination to determine whether she has an undiagnosed condition that causes her to lie, act out, and make unfounded accusations of sexual impropriety, all in order to "get her own way." In syllabus point three of *State v. Delaney*, 187 W. Va. 212, 417 S.E.2d 903 (1992), this Court established a framework for a circuit court's determination of whether the movant has shown "a compelling need or reason" for a physical or psychological examination:

> In making the determination, the judge should consider: (1) the nature of the examination requested and the intrusiveness inherent in that examination; (2) the victim's age; (3) the resulting physical and/or emotional effects of the examination on the victim; (4) the probative value of the examination to the issue before the court; (5) the remoteness in time of the examination to the alleged criminal act; and (6) the evidence already available for the defendant's use.

*Id.* at 213, 417 S.E.2d at 904, Syl. Pt. 3, in part. On review, this Court will consider these same factors in order to determine whether the court abused its discretion in denying the petitioner's motion for additional time in which to have a psychologist and/or a psychiatrist examine C.M.

Under the facts and circumstances of this case, we agree with the circuit court that the petitioner failed to demonstrate a compelling need for a psychological and/or psychiatric examination of C.M., and thus failed to demonstrate a compelling need for a continuance. There is not a scintilla of evidence in the appendix record to suggest that tall

20

tales C.M. told when she was a very small child, e.g., that there was someone hanging from a tree in her back yard, were the result of a psychological condition that was somehow completely missed by the many health care professionals who had been in contact with her. Additionally, aside from one isolated statement C.M. made to her foster mother – which no one other than defense counsel has ever interpreted as a veiled accusation of sexual impropriety on the part of her foster father – the petitioner is the only person C.M. has ever accused of sexually assaulting and abusing her. Further, as the circuit court noted, defense counsel was free to, and did, put on evidence to support his claim that C.M. was a liar, a manipulator, and a child so disruptive and ungovernable that she had to be hospitalized for a lengthy period of time. To this end, counsel elicited evidence about the incidents detailed in the Washington State records, about C.M.'s failed foster placements, and about her need for extensive in-patient psychiatric care. Additionally, counsel conducted a lengthy cross-examination of C.M., who admitted many of the allegations thrown at her but never wavered in her description of what the petitioner had done to her – escalating from the "taste game" to vaginal rape of a prepubescent child.

We conclude that the circuit court did not abuse its discretion in denying the petitioner's motion for a continuance, as the petitioner failed to show a compelling need therefor and was not injured or prejudiced by the court's ruling. In this regard, we agree with the court that evidence showing C.M. lied about other things, on other occasions – the majority of which occasions occurred when she was three or four years old – was wholly insufficient to support a fishing expedition for evidence that she has a psychological or

21

psychiatric condition rendering her incompetent to testify. See *Burdette v. Lobban*, 174 W. Va. 120, 121-22, 323 S.E.2d 601, 603 (1984) ("A parent accused of sexual abuse by his minor child has a constitutional right to know of what his child accuses him in order to prepare his defense. But certainly the child victim has a concurrent right to be protected against unrestrained private examination by adverse interests. Child victims of sexual abuse doubtless have undergone a horrifying experience. For that reason it is necessary to assure the child a modicum of protection.").

### C. Jury Questions During Deliberations

The petitioner's third assignment of error is that he was prejudiced by the circuit court's answers to two questions that the jury asked during the course of its deliberations. Both questions were handwritten on notepaper, and the answers were likewise handwritten on the same notepaper and signed by the court. The questions and answers were as follows:

> Q:    Can a jury reach unanimous decisions on most counts and be hung on a single charge?
>
> A:    No.
>
> Q:    Can we get clarification of which specific acts are associated w/each count? For both cases[.]
>
> A:    You are directed to the instructions wherein the alleged acts are contained in the numbered elements for each offense.

Although the Circuit Clerk's docket sheet for the cases shows that on July 29, 2021, the final day of the trial, "question and answers between jury and judge" were filed and sealed,

22

the trial transcript is totally silent as to how any of this came about. The transcript shows the following:

> (Jury excused to deliberate)
>
> The court: The parties are excused.
>
> (Recess)
>
> (Open Court)
>
> The court: All right, ladies and gentlemen, welcome back. The clerk and the bailiff indicated that there is a verdict[.]

The petitioner claims that the circuit court's answer to the first question was clearly erroneous, that the answer to the second question was incomplete and misleading, and that both of the answers resulted in irremediable prejudice to him and thus warrant reversal of his convictions. In response, the State does not take issue with any of these claims; rather, the State contends that the circumstances surrounding the questions and answers require factual development in post-conviction proceedings pursuant to West Virginia Code sections 53-4A-1 to -10 (Supp. 2024). In particular, the State contends that factual development is necessary to determine whether the petitioner had an opportunity to object to the court's answers but failed to do so, thereby waiving his right to relief on appeal.

Although we are troubled by the circuit court's answers to the jury's questions,[14] we agree with the State that the record in this case is insufficient to allow this Court to resolve any of the factual and legal issues raised by the petitioner. First, it is impossible to ascertain whether the court dealt with this matter off the record or whether the court reporter was present during the court's communications with the jury but failed to prepare or provide a transcript.[15] Second, it is impossible to ascertain whether the court's communications with the jury were conducted ex parte or whether the prosecutor and defense counsel were present when the court considered the jury's questions and

---

[14] There is no question that a jury can bring in a split verdict:

> If there is more than one defendant or offense being tried, the jury at any time during its deliberations may return a verdict or verdicts with respect to a defendant or an offense as to which it has agreed; *if the jury cannot agree with respect to all, the defendants or offenses as to which it does not agree may be tried again.* In all cases involving multiple defendants or offenses, the court shall require the jury to make a separate finding as to each defendant and offense.

W. Va. R. Crim. P. 31(b) (emphasis added). However, because there is no record of what transpired here, *see infra*, we cannot determine whether the circuit court may have had reason to misinterpret the jury's question. With respect to the second question, we note that the indictments were completely devoid of any factual information; therefore, a review of the indictments would in no way have been helpful to the jury in determining what acts were relevant to any particular count or counts.

[15] *See* discussion *infra* of overarching transcript issues in this case.

24

formulated its answers thereto. Third, it is impossible to ascertain whether defense counsel had a chance to object; if so, whether he did in fact object; or if not, why not.[16]

For all of the foregoing reasons, we decline to address the petitioner's third assignment of error, which may be factually and legally developed in post-conviction proceedings.

### D. Due Process Claims

In his fourth and fifth assignments of error, the petitioner claims that he has been deprived of due process of law as a result of inordinate delay in the preparation and production of transcripts of the proceedings below, and also as a result of the loss of two specific audio recordings from which transcripts could be made: a December 19, 2019, bond revocation hearing, and a November 2, 2021, sentencing hearing. We begin our discussion by noting that the petitioner filed his notice of appeal on January 7, 2022, and thereafter filed four sequential motions for an extension of time to perfect the appeal based on the fact that transcripts of the trial and ancillary proceedings had not been prepared and made available to counsel.[17] On April 28, 2023, this Court issued an order directing the circuit court to conduct an investigation regarding the availability of audio recordings of

---

[16] The petitioner's appellate counsel did not try the case, and it is unclear when and how he learned of the jury's questions and the court's answers. As noted, the transcript is silent on this matter and the handwritten notes were filed under seal.

[17] The court reporter was ultimately held in contempt by this Court and prohibited from serving as an official court reporter or substitute court reporter in West Virginia.

25

the two hearings in question. The court complied, reporting in an order entered on May 24, 2023, that he had conducted an extensive search of the court reporter's files, "navigating unorganized audio files, actually listening to said audio files, and matching the same to docket sheets and the law clerk's hearing notes." The court's conclusion was that "using [the above] time intensive investigation techniques . . . the audio recordings for proceedings on December 19, 2019, and on November 2, 2021, after much effort, are not available and *cannot be recovered.*" (Emphasis added).

The petitioner's first claim is that the delay of fourteen to sixteen months in his receipt of the transcripts of the trial, the arraignment on Case No. 19-F-71, two suppression hearings, a status hearing, and a pretrial hearing, denied him due process of law. In this regard, this Court has held that,

> [t]he right of a defendant to a transcript is not adequately satisfied merely by furnishing the transcript at a time convenient to the court reporter. A convicted defendant is entitled not only to a transcript, but he is entitled to use the transcript to seek appellate review without inordinate delay.[18] We are repelled by the thought that a defendant may be convicted through a trial process which is subject to direct attack for error and remain confined an inestimable number of years, perhaps serving his entire sentence—unable to seek appellate review of his conviction—due to a dilatory or overworked court reporter. Such delay in adjudication or in the

---

[18] The petitioner contends that this Court's actions in holding the court reporter in contempt, terminating his employment, and barring him from future courtroom employment, establish ipso facto that the delay in this case was "inordinate" within the meaning of *Mayle*.

> exercise of the right to obtain appellate review may be as
> violative of due process as the denial of the transcript itself.

*Mayle v. Ferguson*, 174 W. Va. 430, 432, 327 S.E.2d 409, 412 (1985) (quoting *State ex rel. Johnson v. McKenzie,* 159 W.Va. 795, 803-04, 226 S.E.2d 721, 726 (1976) (footnote added); *cf. Petry v. Stump*, 219 W. Va. 197, 199, 632 S.E.2d 353, 355 (2006) ("Due process rights must be considered under our general rules concerning unreasonable delay."). The petitioner further makes the novel argument that the delay in receiving the transcripts violated his constitutional and statutory right to a speedy trial,[19] which, he contends, must surely extend to "post-trial phases of criminal proceedings."

This Court has never drawn a bright line as to how much delay is too much delay, i.e., when delay is "inordinate" and thus crosses the due process threshold; this is a fact-based determination which can only be made on a case-by-case basis. On the record now before us, and in the absence of evidentiary development to determine what if any prejudice the petitioner suffered from the delay in receiving the transcripts, this Court cannot determine either the merits of the petitioner's due process claim or the concomitant question of what an appropriate remedy would be.

The petitioner's second claim is that his inability to access tapes or transcripts of his bond revocation hearing and his sentencing hearing constitutes a due process

---

[19] *See* W. Va. Const. art. III, § 17; W. Va. Code § 62-3-21.

violation on a further ground, specifically, that a review of those materials might bring other alleged errors to light. In this regard, the petitioner's brief provides no specifics as to what those errors might possibly be; appellate counsel, who did not try the case, can only speculate about what might have happened or been said during the hearings.[20] Again, on the record now before us, and in the absence of any testimony or evidence from individuals who were present at the bond hearing and/or the sentencing hearing, this Court cannot determine either the merits of the petitioner's due process claim or the concomitant question of what an appropriate remedy would be.

For all of the foregoing reasons, we decline to address the petitioner's fourth and fifth assignments of error, which may be factually and legally developed in post-conviction proceedings.

### E. Cumulative Error

Finally, the petitioner claims that the errors complained of herein, even if they are individually deemed to be harmless, warrant relief when considered together. In this regard, we have held that where "the record of a criminal trial shows that the

---

[20] In the circuit court's order following the bond revocation hearing, it was ordered that "the [petitioner] shall have no contact with [D.M.]," the mother of C.M. Petitioner's brief implies that this may have affected trial counsel's ability to interview the mother and/or prepare her for testifying at trial; however, there is nothing in the appendix record from which we can determine whether counsel was in fact precluded from interviewing the mother or believed that he was precluded from doing so. Again, this is a matter which may be factually and legally developed in post-conviction proceedings.

cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syl. Pt. 12, in part, *State v. Hoard*, 248 W. Va. 428, 889 S.E.2d 1, 4 (2023). We find that the doctrine of cumulative error is inapplicable in the instant case, as this Court has not found any error in the appendix record before us.

## IV. Conclusion

For the foregoing reasons, the December 8, 2021, sentencing order entered by the Circuit Court of Barbour County, West Virginia, is affirmed.

Affirmed.